# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

UNITED STATES OF AMERICA        )
                                       )
     v.                           )        CAUSE NO.: 1:08-CR-67-TLS
                                         )
DARNAY D. WILSON             )

## OPINION AND ORDER

This matter is before the Court on Defendant Darnay D. Wilson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 51], filed on October 29, 2010, along with a Memorandum of Law in Support [ECF No. 52]. The Government responded on November 29, 2010 [ECF No. 59], and the Defendant filed a Traverse on January 31, 2011 [ECF No. 60]. The Court has reviewed the Exhibits attached to the Defendant's Memorandum of Law in Support, including the document entitled "Sworn Affidavit" [ECF No. 52 at 43–44].

## BACKGROUND

The Defendant, Darnay D. Wilson, was charged with robbing the First Source Bank at 5719 Bluffton Road, Fort Wayne, Indiana, on August 15, 2008, and assaulting and putting the life of another person in jeopardy by using a dangerous weapon in the commission of the offense, in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2 (Count 1). The Government also charged the Defendant with brandishing the dangerous weapon—a short-barreled shotgun—during the armed bank robbery, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (Count 2).

Attorney Robert W. Gevers II represented the Defendant through the trial process.

Attorney Gevers appeared at the Detention and Probable Cause Hearing on August 21, 2008, where the Defendant waived probable cause and was detained pending trial. The Magistrate Judge arraigned the Defendant on August 29, 2008, and ordered his continued pretrial detention. A series of motions by Attorney Gevers followed, including two Motions to Continue, and a Motion to Appoint Investigator, all of which were granted. Then on March 16, 2009, the parties entered a Plea Agreement [ECF No. 27], and the Court set a change of plea hearing for March 18.

In the Plea Agreement, the Defendant stated he believed Attorney Gevers was fully informed as to the facts and circumstances concerning the matters in the Indictment. He stated his detailed understanding of the rights he was waiving by pleading guilty. He demonstrated an understanding that the Court would determine an appropriate sentence taking into account, among other factors, the applicable U.S. Sentencing Guidelines. The Defendant agreed to plead guilty to both Counts 1 and 2 of the Indictment because he was in fact guilty of all offenses charged in those Counts. He stated his understanding of the possible penalties for these Counts, including a sentence of ten years to life for Count 2. Further, he agreed that the Government would "recommend that the Court should impose a sentence upon [him] equal to the minimum of the applicable guideline range." He agreed that the amount of loss to the First Source Bank was between $10,000 and $50,000, and that he made a threat of death during the robbery. With respect to his appellate rights, the Defendant stated:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed, I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement; with this understanding and in consideration of the Government's entry into this plea agreement, I expressly waive my right to appeal

> or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited ¶ to, a proceeding under Title 28, United States Code, Section 2255.

(Plea Agreement ¶ 7.e.) The Defendant also stated that Attorney Gevers had "done all that anyone could do to counsel and assist" him, that he understood the proceedings against him, that his plea of guilty was offered "freely and voluntarily and of [his] own accord," that no promises were made to him other than those in the Plea Agreement, and that he had not been "threatened in any way" to cause him to plead guilty.

At the March 18 change of plea hearing, the Defendant pled guilty in accordance with his Plea Agreement. He stated that he had an opportunity to read and discuss his Plea Agreement with his lawyer before signing it; that he understood the terms of the Plea Agreement; that no one had threatened him in any way to get him to sign the Plea Agreement; that no one had made any promises or assurances of any kind to get him to plead guilty other than the promises contained in the Plea Agreement; that he was pleading guilty of his own free will; that he understood the Government would be recommending he receive a sentence equal to the minimum of the applicable Guideline range, but that the Court could reject the recommendation without letting him withdraw his plea; and that the penalty he faced on Count 2 was not less than ten years and not more than life. He also admitted that he committed the crimes charged in Counts 1 and 2; that he brandished the short-barreled shotgun as part of the bank robbery; that it was a working firearm at the time of the robbery; and that the deposits of the First Source Bank were insured by the Federal Deposit Insurance Corporation at the time of the robbery. Further,

he stated that he understood he was agreeing to waive his right to appeal his conviction or sentence and the manner in which they were imposed; that he was agreeing to be prohibited from collaterally attacking his conviction or sentence or the manner in which they were imposed through a habeas corpus petition; and that he was giving up his right to claim the ineffective assistance of legal counsel unless the claimed ineffectiveness related directly to the appellate waiver or its negotiation. He also stated an understanding that the United States Probation Office would prepare a presentence investigation report detailing his criminal history and background. Finally, he stated that he was fully satisfied with the representation provided by Attorney Gevers. At the conclusion of the hearing, the Court found that the Defendant was fully competent and capable of entering an informed plea, that he was aware of the charges and the consequences of the plea, and that the Defendant's plea of guilty was a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of the offenses. The Court therefore accepted the Defendant's guilty plea on both Counts 1 and 2. Prior to sentencing, Attorney Gevers filed a Sentencing Memorandum [ECF No. 37] on behalf of the Defendant, requesting that the Court impose a sentence below the Guideline range and not apply the career offender enhancement because the convictions supporting the enhancement all occurred when the Defendant was between ages seventeen and twenty-two. Additionally, Attorney Gevers asked the Court to consider the Defendant's troubled personal background circumstances and impose a sentence outside of the advisory Guideline range.

On November 9, 2009, applying the career offender enhancement, the Court sentenced the Defendant to 188 months imprisonment on Count 1, and 120 months imprisonment on Count 2 to run consecutively with Count 1. At the November 9 sentencing hearing, Attorney Gevers

stated on behalf of the Defendant that a career offender sentence was a correct application of the Guidelines, but argued nevertheless for a sentence 118 months fewer than the Guideline-recommended sentence. Furthermore, when the Court asked the Defendant if he agreed with everything Attorney Gevers had said on his behalf, the Defendant stated that he did. The Defendant did not appeal his conviction.

The Defendant now seeks to vacate, set aside, or correct his sentence on the basis of ineffective assistance of counsel, and challenges the legality of his sentence. The Government, in its Response, argues that the Defendant's claims provide no basis for collateral relief because they have been waived. The Court agrees that the Defendant's claims do not entitle him to collateral relief.

## ANALYSIS

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

The Defendant asserts that he is entitled to habeas relief on seven grounds[1]: First, he maintains that his counsel was ineffective when he refused to file a notice of appeal on the

---

[1]In his Memorandum of Law in Support, the Defendant lists five grounds for habeas relief, but the Court is treating each independent argument as a potential ground for relief.

Defendant's behalf because the Defendant had waived his right to appeal as part of his Plea Agreement. Second, the Defendant alleges his attorney was ineffective in failing to advise him that upon pleading guilty he could receive a career offender sentence for the charges he was facing, which undermined his ability to intelligently decide whether to accept the Plea Agreement. The Defendant's third claim is that his counsel's assistance was ineffective because, the Defendant alleges, he was erroneously advised that he could receive a life sentence if he did not plead guilty and because his attorney coerced him to sign the Plea Agreement with threats that he would receive a life sentence if he did not plead. Fourth, the Defendant argues Attorney Gevers was ineffective for failing to challenge the Government's indictment including an allegation that the First Source Bank was federally insured at the time of the bank robbery. Fifth, the Defendant argues that his sentence was not lawful because his career offender status on sentencing was based in part upon an Indiana domestic battery felony. Sixth, the Defendant challenges the lawfulness of his sentence because he alleges that Assistant United States Attorney Anthony Geller committed prosecutorial misconduct by charging the § 2113 bank robbery offense before receiving the letter verifying the federally insured status of the deposits in the bank on the day of the robbery. Seventh, the Defendant argues his sentence is unlawful because the elements essential to a conviction under § 2113(d) were omitted from the Plea Agreement, which he argues denied him due process and effective assistance of counsel in plea negotiations.

The Government argues in its Response that the Defendant has not alleged any ineffective assistance of counsel "specifically with respect to the negotiation of the waiver provision," (Gov't's Resp. 3, ECF No. 59), and therefore all of his challenges are obviated by his

proper waiver. The Government also notes that the Defendant's "Sworn Affidavit" is neither

signed nor notarized, and therefore the Defendant has not produced admissible evidence

requiring a hearing on any of his claims.

**A.      Legal Standard**

**1.      *Plea Waivers***

A plea agreement is a type of contract subject to contract law principles tempered by

limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d

634, 636 (7th Cir. 2005). Waivers, including those that waive the right to collaterally attack a

conviction or sentence, are enforceable as a general rule. *Jones v. United States*, 167 F.3d 1142,

1145 (7th Cir. 1999). An appellate waiver is enforced if its terms are "express and

unambiguous," *see United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997), and if the record

shows that the defendant "knowingly and voluntarily" entered into the agreement, *United States*

*v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001) (quoting *Jones*, 167 F.3d at 1144). The Seventh

Circuit has held that only two claims can be raised in a § 2255 motion by a defendant who has

expressly and unambiguously waived his right to collaterally attack his conviction and sentence:

(1) claims that the waiver was not knowingly and voluntarily made; or (2) claims that counsel

was ineffective in negotiating the waiver. *Jones*, 167 F.3d at 1145 (stating that "we reiterate that

waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to §

2255 survives only with respect to those discrete claims which relate directly to the negotiation

of the [plea agreement]"); *see also United States v. Rhodes*, 330 F.3d 949, 952 (7th Cir. 2003)

(noting that a waiver does not deprive a defendant of the right to pursue a claim that the waiver

was involuntarily made, was based on a constitutionally impermissible factor (such as race), or was made without the effective assistance of counsel); *United States v. Behrman*, 235 F.3d 1049, 1051–52 (7th Cir. 2000) (stating that all the terms of a plea agreement stand or fall together, and that only arguments that would nullify the plea itself survive voluntary waivers of appeal and collateral attack).

### 2.      *Ineffective Assistance of Counsel Claims*

In seeking to prove that his counsel rendered ineffective assistance, the Defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

The performance prong requires the defendant to specifically identify acts or omissions that form the basis of his claim of ineffective assistance. *Strickland*, 466 U.S. at 690. Based on the totality of the circumstances, the court must then determine whether the identified acts and omissions fall outside the range of professionally competent assistance. *Id.* The prejudice prong requires the defendant to show that his trial counsel's errors are so serious as to render his trial fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 368–69 (1993).

"Failure to raise a losing argument, whether at trial or on appeal, does not constitute

ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

**B.**     **Claims that Do Not Involve an Involuntary Waiver or Negotiation of the Plea**

Under the Seventh Circuit's formulation, the only claims that survive a proper waiver of the right to appeal or collaterally challenge a sentence are claims that the waiver was involuntary, *i.e.* "not the product of the defendant's free will," or claims of ineffective assistance of counsel in the negotiation of the waiver. *Jones*, 167 F.3d at 1145. It is undisputed that the Defendant entered into a Plea Agreement which waived his right to appeal or collaterally challenge his sentence. The Court begins with an analysis of the grounds for relief raised by the Defendant which do not involve either category of claims still available to him under *Jones.*

**1.**     *Claimed Ineffective Assistance for Failing to File Notice of Appeal*

The Defendant's first claim of ineffective assistance of counsel is that Attorney Gevers was ineffective for not filing a notice of appeal on his behalf despite the appellate waiver in his Plea Agreement. The Defendant avers that Attorney Gevers stated on the day of sentencing—immediately after the sentencing hearing—that he would enter an appeal on the Defendant's behalf, but then sent the Defendant a letter a few days later stating that he would not file the appeal because the Defendant had waived his right to do so. The Defendant argues that Attorney Gevers did not know on the date of sentencing that the Defendant had waived his right to appeal, and that his assistance must therefore have been ineffective with respect to the negotiation of the Plea Agreement.

The Defendant cites to several different Courts of Appeals which have found that a

waiver of appeal in a plea agreement does not relieve counsel of the duty to file a notice of appeal upon a client's request. *See Campusano v. United States*, 442 F.3d 770, 772–77 (2d Cir. 2006); *United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007); *United States v. Tapp*, 491 F.3d 263 (5th Cir. 2007); *Watson v. United States*, 493 F.3d 960 (8th Cir. 2007); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195–99 (9th Cir. 2005); *United States v. Garrett*, 402 F.3d 1262, 1265–67 (10th Cir. 2005); *Gomez-Diaz v. United States*, 433 F.3d 788, 791–94 (11th Cir. 2005). Notably, the Defendant does not cite to *United States v. Nunez*, 546 F.3d 450 (7th Cir. 2008), where the Seventh Circuit disagreed with those courts and held that "a waiver of appeal must be enforced" where "the plea was voluntary." *Id.* at 453. Reasoning that "[a] lawyer . . . has a duty to his client to avoid taking steps that will cost the client the benefit of the plea bargain," the Seventh Circuit concluded that "a lawyer has a duty to the judiciary to avoid frivolous litigation—and an appeal in the teeth of a valid waiver is frivolous." *Id.* at 455.

First, the Defendant's argument that Attorney Gevers's failure to file a notice of appeal has any relation to the negotiation of his plea agreement is not supported by facts in the record. The Defendant suggests that Attorney Gevers was not aware on the date of sentencing that the Defendant had just waived his right to appeal his conviction or sentence or the manner in which they were imposed, and thus that his representation with respect to the Plea Agreement in general must have been ineffective. The Defendant suggests this through a statement of facts in his Memorandum of Law but not through sworn affidavit testimony.[2] In a Letter from Attorney Gevers to the Defendant, dated November 11, 2009—two days after the Defendant's sentencing

---

[2]The Defendant does make other allegations in a document entitled "Sworn Affidavit" [ECF No. 52 at 43–44], however that document is neither signed nor notarized.

hearing—Attorney Gevers states as follows:

> In court at the time of your sentencing hearing, you and I discussed whether or not you were able to appeal your conviction and sentence. I refer you to paragraph seven E of the plea agreement that you signed and that we have previously discussed wherein you waive, or give up, your right to appeal or contest your conviction and your sentence. This waiver of your appeal rights has been upheld by the Seventh Circuit Court of Appeals in prior cases. Therefore, you cannot appeal your sentence at this time.

(Letter, ECF No. 52 at 24.) The Court finds that Attorney Gevers's Letter does not support the proposition for which the Defendant offers it. It does not suggest that Attorney Gevers was unaware at the November 9 sentencing hearing whether or not the Defendant had just waived his right to appeal his sentence or conviction. Instead, it suggests merely that Attorney Gevers was unaware at the November 9 sentencing hearing whether or not the Defendant would be able to file an appeal of his sentence or conviction in light of the fact that he had just waived his right to appeal his sentence or conviction. The record put forward by the Defendant does not show that this alleged oversight by Attorney Gevers had anything to do with the negotiation of the Plea Agreement. Nor does the record suggest that Attorney Gevers's refusal to file the notice of appeal caused the Defendant to unknowingly or involuntarily enter into the Plea Agreement. Therefore, the Defendant's waiver forecloses this claim under *Jones*.

Further, a waiver of appeal must be enforced as long as the Plea Agreement was voluntarily entered. *Nunez*, 546 F.3d at 453. At the November 9, 2009, change of plea hearing, the Court found that the Defendant made a knowing and voluntary waiver of his right to appeal his conviction or sentence, and of his right to collaterally attack his conviction or sentence except for a claim of ineffective assistance of counsel relating to the negotiation of his plea. At that hearing, the Defendant stated that he had an opportunity to read and discuss his Plea

Agreement with his lawyer before signing it, that he understood the terms of the Plea Agreement, that no one had threatened him in any way to get him to sign the Plea Agreement, that no one had made any promises or assurances of any kind to get him to plead guilty other than the promises contained in the Plea Agreement, and that he was pleading guilty of his own free will. The Court found that the Defendant was fully competent, aware of the charges and the consequences of his plea, and that the plea was knowing, voluntary, supported by an independent basis in fact, and contained each of the essential elements of the offenses. Additionally, the Plea Agreement states that the Defendant entered into the plea voluntarily, and that no one had threatened him or made any promises not contained in the Plea Agreement to convince him to plead guilty. Thus, the record shows that the Defendant's plea was voluntary, and therefore "the waiver of appeal must be enforced." *Nunez*, 546 F.3d at 453. On this basis, if the claim were not already foreclosed under *Jones*, the Court could deny the Defendant's first claim for relief under *Nunez*.

Finally, even were the Court to reach the merits of the Defendant's ineffective assistance of counsel claim regarding the failure to file a notice of appeal when the Plea Agreement waives such an appeal, the Defendant's claim would fail. As Attorney Gevers correctly noted in his Letter, the Seventh Circuit has upheld a lawyer's refusal to file an appeal when the client has waived the right to appeal. A lawyer is obliged to protect the client's right to the benefit of the plea agreement, and to avoid frivolous litigation. *See Nunez*, 546 F.3d at 455. Furthermore, "an appeal in the teeth of a valid waiver is frivolous." *Id.* Therefore, the Defendant's claim would fail the first prong of *Strickland* because Attorney Gever's action was objectively reasonable, and would fail the second prong of *Strickland* because even if Attorney Gevers had filed the

notice of appeal as the Defendant requested, the Seventh Circuit would have denied the appeal based on the Defendant's valid waiver. However, as stated above, the Court need not reach the merits of the Defendant's claim because the Defendant made a knowing and voluntary waiver of his right to collaterally challenge his sentence, and this claim does not relate to the negotiation of the Plea Agreement or involve an allegedly unknowing or involuntary plea.

2.      ***Claimed Ineffective Assistance for Failing to Challenge the Government's Evidence on Whether the Deposits were Federally Insured***

The Defendant claims Attorney Gevers was ineffective when he failed to challenge the Government's evidence on the issue of whether the First Source Bank was federally insured on the day of the bank robbery. In support, the Defendant offers a letter from the Federal Deposit Insurance Corporation dated November 5, 2008, showing that the First Source Bank at 5719 Bluffton Road, Fort Wayne, Indiana, was in fact federally insured on August 15, 2008. (Letter and Attachments, ECF No. 52 at 27–34.) The Defendant argues that as his Indictment was filed with this Court on August 27, 2008, the Government did not have proof of an element of the offense at the time the Grand Jury indicted him, and his attorney was therefore ineffective for failing to challenge this evidence.

Notably, the Defendant does not suggest that the First Source Bank was actually uninsured by the FDIC on the date of the bank robbery. He merely asserts that his attorney was ineffective for failing to challenge what he views as the Government's failure of proof on this element. The Defendant does not argue that this alleged omission by Attorney Gevers caused him to unknowingly or involuntarily enter into his Plea Agreement. Nor does the Defendant's argument suggest that Attorney Gevers was ineffective in the negotiation of the plea. Therefore,

as discussed above, this claim fails because it was waived by the Defendant's voluntary plea and is foreclosed by the Seventh Circuit's *Jones* formulation. Even if the Defendant's argument went to ineffectiveness in the negotiation of the plea, the Defendant's argument would fail under a *Strickland* analysis. First, it appears that Attorney Gevers's action in not challenging the Government's evidence on this point was objectively reasonable. As the Seventh Circuit has stated, "[f]ailure to raise a losing argument . . . does not constitute ineffective assistance of counsel." *Stone*, 86 F.3d at 717. The record suggests this would have been a losing argument, and failure to raise it is not ineffective assistance of counsel. Second, because it would have been a losing argument, Attorney Gevers's failure to raise it cannot have caused actual prejudice to the Defendant. Accordingly, even if this claim were not foreclosed by the Defendant's waiver of his collateral challenge rights under *Jones*, it would be denied because the Defendant has not shown ineffective assistance of counsel.

### 3. *Claimed Due Process Violation for the Use of a Prior Domestic Battery as a Crime of Violence Predicate to Career Offender Status*

The Defendant claims this Court violated his due process rights under the Fifth Amendment when it sentenced him as a career offender. He argues his 2007 felony conviction in Allen County, Indiana, for domestic battery cannot be used as a career offender predicate offense because it "only involved provoking or insulting contact with his ex-fiancee, and it did not encompass the kind of violent and aggressive conduct required by the Supreme Court" to substantiate career offender status. (Mem. of Law in Supp. 15, ECF No. 52.) *See Begay v. United States*, 553 U.S. 137, 139 (2008) (holding that driving under the influence of alcohol is not a "violent felony" under the Armed Career Criminal Act). The Defendant's claim is not that he

was coerced into unknowingly or unwillingly signing his Plea Agreement because his domestic battery conviction was used to substantiate his career offender status. Nor does the Defendant claim that his attorney was ineffective in negotiating the Plea Agreement because of a miscalculation on this point. Indeed, the Defendant had opportunity to object to the Guidelines calculations in his presentence investigation report and did not object. Then at sentencing, Attorney Gevers acknowledged that the Guidelines calculations in the presentence investigation report were correct, and when asked about whether he agreed with his attorney's statements on his behalf, the Defendant answered that he did. Therefore, because the Defendant voluntarily waived his right to collaterally challenge his sentence, and because this claim is no longer available to him under *Jones*, this claim for collateral relief will be denied.

Even were the Court to reach the merits of this claim, it appears the Defendant's career offender sentence was appropriate. First, it appears the Defendant's 2007 domestic battery conviction was violent for the purposes of the career offender classification. The Seventh Circuit has held that to satisfy the career offender definition of a crime of violence, the offense "must in the ordinary run of cases describe behavior that poses a sufficiently great risk of physical injury to another." *United States v. Woods*, 576 F.3d 400, 408 (7th Cir. 2009) (citing *Chambers v. United States*, 555 U.S. 122, 126–30 (2009)). The Indiana crime of domestic battery has as an element a knowing or intentional touching "in a rude, insolent, or angry manner that results in bodily injury." Ind. Code § 35-42-2-1.3. A rude, insolent, or angry touching that results in bodily injury is violent, by definition posing a sufficiently great risk of physical injury to another, and would qualify his 2007 domestic battery conviction as a career offender predicate offense. *See United States v. Parrish*, 422 Fed. App'x 540, 542–43 (7th Cir. 2011) (upholding district court

determination that an Illinois domestic battery conviction qualified as a career offender predicate offense); *United States v. Upton*, 512 F.3d 394, 405 (7th Cir. 2008) (holding that Illinois domestic battery convictions requiring proof of "bodily harm" "clearly qualif[ied]" as career offender predicate offenses). Further, it appears that the Defendant's 2002 felony controlled substance conviction and his 2005 felony battery conviction would qualify him for the career offender enhancement whether or not his 2007 felony domestic battery conviction was included. Finally, even if the Defendant had not been characterized as a career offender, the presentence investigation report indicates that he had 15 criminal history points. Thus, his criminal history category would have been VI even without application of the career offender provision, and his Guidelines sentence would have been the same. Because the Defendant has waived this claim, and because it appears he was not denied due process when he was sentenced as a career offender, this claim for collateral relief will be denied.

**4.**     *Allegation of Prosecutorial Misconduct*

The Defendant claims that his due process rights were violated when AUSA Geller obtained a grand jury indictment against him for bank robbery in August and did not receive the letter verifying the FDIC insured status of the bank until November. The Defendant argues without any evidence that AUSA Geller must not have had any proof about the FDIC insured status of the bank until November. The Defendant does not argue that this claim caused him to unknowingly or involuntarily enter into the Plea Agreement, nor does he allege that this claimed prosecutorial misconduct had anything to do with the assistance of his counsel in negotiating the Plea. Accordingly, under *Jones*, this claim is foreclosed by the Defendant's voluntary waiver of

his right to collaterally challenge his sentence.

5.      ***Claimed Ineffective Assistance for Failing to Object to Allegedly Improper Conviction Under 18 U.S.C. § 2113(d)***

The Defendant's next claim is that he should not have been convicted of assaulting or putting life in jeopardy by the use of a dangerous weapon or device under 18 U.S.C. § 2113(d) because he alleges that the Plea Agreement did not list the elements necessary for conviction under § 2113(d). The Defendant's challenge to the Plea Agreement does not suggest that this § 2113(d) issue somehow coerced him to unknowingly or unwillingly enter into the Plea Agreement. However, viewed broadly, it appears the Defendant is arguing that Attorney Gevers's failure to object to this supposed deficiency in the Plea Agreement amounted to ineffective assistance of counsel in the negotiation of the plea. The Court finds that the Defendant's claim does not relate to the negotiation of the plea. The Defendant is not claiming that Attorney Gevers should have negotiated a Plea Agreement that did include more information about the § 2113(d) offense. Because this claim is foreclosed by the Defendant's voluntary waiver, and because it does not fall into the categories of claims still available to him under *Jones*, the Court will deny this claim for collateral relief.

Even were the Court to reach the merits, the Defendant's claim misses the point. He insists that conviction would be inappropriate based on language in the Plea Agreement that he argues is deficient. But at the change of plea hearing, the Defendant admitted to committing the charges contained in the Indictment in Counts 1 and 2. Specifically, the Defendant admitted to assaulting bank employees during the robbery by having them lie on the floor and brandishing the short-barreled shotgun at them. He also admitted that it was a working firearm, although it

was not loaded.[3] Assaulting any person by the use of a dangerous weapon substantiates a

conviction under § 2113(d). Because the Defendant pled to the offenses charged in both Counts,

Attorney Gevers's assistance was not objectively unreasonable when he did not object to the

§ 2113(d) conviction, nor did his failure to object prejudice the Defendant. Furthermore, the

Defendant has not suggested that he would have elected to go to trial on the § 2113(d) offense if

Attorney Gevers had somehow advised him differently or negotiated a different Plea Agreement.

Accordingly, the Defendant's objection to his conviction under § 2113(d) is proscribed by his

proper waiver, and even on the merits of the claim, it does not provide a basis for collateral

relief. The Court will therefore deny this claim.[4]


## C.    Claims that Do Involve the Negotiation of the Plea

### 1.    *Claimed Ineffective Assistance for Failing to Advise of a Possible Career Offender Status*

The Defendant claims that Attorney Gevers failed to advise him that upon pleading guilty

the Government could pursue a career offender sentence against him, and that his attorney's

---

[3]The Supreme Court has held that an unloaded gun is still a "dangerous weapon" under § 2113(d), and that assault with an unloaded gun during a bank robbery substantiates a conviction under § 2113(d). *McLaughlin v. United States*, 476 U.S. 16, 17–18 (1986); *United States v. Park*, 52 Fed. App'x 294, 295 (7th Cir. 2002).

[4]As part of this claim, the Defendant argues he should not have been convicted under § 2113(a) because the Indictment and Plea Agreement did not specify the amount of money he took from the bank, and that his counsel was ineffective on this point. The Court finds that the Defendant is confusing bank robbery under § 2113(a), which does not require the Government to prove the amount of property or money taken, with stealing from a bank under § 2113(b), which requires the Government to prove whether the value of the property or money taken exceeded or did not exceed $1000. Because the Government was not required to prove the amount taken, the Defendant's § 2113(a) argument fails, and his attorney was not ineffective for failing to argue it. Furthermore, the Court notes that the Defendant agreed in the Plea, for the purposes of applying the Guidelines, that the amount of loss was more than $10,000 but less than $50,000.

advice was so incorrect and insufficient that it undermined his ability to make an intelligent decision whether or not to plead guilty. The Defendant argues Attorney Gevers was ineffective in not investigating the prior offenses prior to plea negotiations, notes that the predicate offenses used in determining his career offender status are not outlined in the Plea Agreement, and appears to argue that Attorney Gevers was incorrect in advising him that he could receive a life sentence if he did not plead guilty.[5] The Government responds only by arguing that this claim—like the rest of the Defendant's claims—does not relate directly to the waiver provision of the Plea Agreement or its negotiation.

The Court finds that this claim by the Defendant does at least arguably relate to the waiver provision of his Plea Agreement. If it were true that he had been misadvised about the consequence of pleading guilty, then the claimed ineffective assistance could have affected his decision whether to accept the Plea Agreement, which would have also affected the waiver provision as an integral component of his Plea Agreement. Therefore, the Court will analyze whether the Defendant's claimed ineffective assistance meets the *Strickland* standard. As the Government notes, the Defendant's claims against Attorney Gevers do not come before the Court in the form of a verified petition or a properly sworn affidavit. Therefore, the only suggestion in the record that Attorney Gevers failed to notify the Defendant of a possible career offender sentence comes from the Defendant's Memorandum of Law in Support. The Defendant has not provided a sworn affidavit, and absent such a detailed affidavit, the Court sees no need for an evidentiary hearing. *See Galbraith v. United States*, 313 F.3d 1001, 1009–10 (7th Cir.

---

[5]As discussed below, it was true that the Defendant faced the possibility of a life sentence on Count 2. The Court so advised him at the change of plea hearing on March 18, 2009, and Attorney Gevers was correct to advise him of the same.

2002). In any case, the Court finds that the Defendant was properly advised on the record, so his claim of ineffective assistance must fail under a *Strickland* analysis.

First, the Court finds that the record does not indicate Attorney Gevers's counsel was objectively unreasonable. In the Plea Agreement, the Defendant stated his understanding that the maximum sentence he faced on Count 1 was not more than 25 years of confinement, and the maximum sentence he faced on Count 2 was not less than 10 years of confinement and not more than life, to run consecutively to his term of imprisonment for Count 1. (Plea Agreement ¶ 7.b.) The Defendant also stated his understanding that the Court would determine the applicable Guideline range in light of an investigation by the United States Probation Office (*Id.* ¶ 6), and that no one could predict the precise sentence to be imposed as the Court could impose any sentence within the statutory maximum for his offenses (*Id.* ¶ 7.e). Furthermore, at the change of plea hearing, the Court notified the Defendant of the same possible penalties, and notified him that the Court's sentence would be informed by a presentence investigation report to be produced by the United States Probation Office, but that the Court could decide to adjudge a sentence either greater or less than the advisory Guideline sentence. The Defendant did not object to the career offender determination in his presentence investigation report. He entered a Sentencing Memorandum requesting the Court to consider his difficult life circumstances and impose a sentence varying 118 months from his Guideline sentence, effectively requesting the Court not to apply the career offender provision of the Guidelines. Finally, at the sentencing hearing on November 9, 2009, the Defendant indicated his agreement with Attorney Gevers's statement that his career offender status was a correct application of the Guidelines. From all the evidence before the Court, it appears the Defendant knew his sentence would be based in part upon his

criminal history, and elected to go forward with his plea even in light of his career offender status. Thus, in no way was Attorney Gevers's assistance deficient in this matter.

Even if the Defendant had established through evidence on the record that Attorney Gevers's assistance was objectively unreasonable, the Court finds that he has not shown how he was prejudiced by his attorney's allegedly unreasonable assistance. Attorney Gevers submitted a Sentencing Memorandum compellingly presenting the specific life circumstances leading to the Defendant's crimes and requesting a sentence that would significantly vary from the Guidelines sentence and discount the career offender enhancement. Although the Court did not grant the requests put forward by Attorney Gevers, there is no evidence to suggest that the Court would have decided any differently absent a plea of guilty or a Plea Agreement. The Court sentenced the Defendant to the minimum sentence under the applicable Guideline range in accordance with the Plea Agreement. Thus, the Defendant has failed to show how Attorney Gevers not advising him of the possibility of a career offender sentence could possibly have affected either the outcome on the merits or his ultimate sentence. Because the Defendant's claim fails both prongs of the *Strickland* ineffective assistance of counsel analysis, his § 2255 Motion will be denied with respect to this claim.

2.      ***Claimed Ineffective Assistance for Alleged Threats and Incorrect Advising***

The Defendant claims he was coerced to plead guilty by threats from Attorney Gevers that he would receive a life sentence if he did not plead guilty. Additionally, the Defendant suggests that Attorney Gevers was incorrect when he advised the Defendant that he faced the possibility of a life sentence.

The Court notes again that the only evidence put forward by the Defendant on this claim comes from his Memorandum, and not from a properly signed or notarized document. However, because both of the allegations within this claim are still available to the Defendant under *Jones*, the Court will analyze whether the Defendant's evidence demonstrates that he involuntarily entered into his Plea Agreement, or that Attorney Gevers was ineffective in the negotiation of the Plea.

The first allegation is that Attorney Gevers threatened the Defendant to induce him to plead guilty. This allegation is directly contradicted by the Defendant's own words. In the Plea Agreement, the Defendant stated that no one had made any threats to convince him to plead guilty. Additionally, at the Change of Plea Hearing, the Defendant stated that no one had threatened him in any way to get him to sign the Plea Agreement, that no one had made any promises or assurances of any kind to get him to plead guilty other than the promises contained in the plea agreement, and that he was pleading guilty of his own free will. The Defendant's words show that his plea was voluntary. As the Seventh Circuit has stated, "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *Bethel v. United States*, 458 F.3d 711, 719 (7th Cir. 2006) (quoting *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)). The Defendant has not offered any explanation, let alone a compelling explanation, for why he stated at his change of plea hearing that no one had made any threats to compel him to plead guilty. The Defendant has failed to show that he was coerced into an involuntary Plea.

The Defendant's second allegation within this claim—that Attorney Gevers incorrectly

advised him of the possibility of a life sentence—also fails. The record demonstrates that the Defendant did in fact face the possibility of a life sentence for Count 2. The Defendant acknowledged this possible sentence in his Plea Agreement, and at the change of plea hearing. Because the Defendant did face the possibility of a life sentence, Attorney Gevers so advising him was objectively reasonable and could not have caused prejudice to the Defendant. Therefore, the Defendant has failed to show that his attorney was ineffective in the negotiation of the plea.

As the Defendant's claim fails to show either that the Defendant entered into the plea unknowingly and involuntarily or that Attorney Gevers was ineffective in the negotiation of the plea, the Court will deny this claim for collateral relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where the district court has rejected the constitutional claims on procedural grounds, the court should issue a certificate of

appealability "when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Where the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. The defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here. The constitutional issues presented by the Defendant's Motion are whether the Defendant made a knowing, voluntary waiver of his right to appeal and collaterally challenge his sentence, whether Attorney Gevers rendered ineffective assistance in the negotiation of the Plea Agreement, and whether he coerced the Defendant to sign the Plea Agreement. Because the record indicates that the Defendant's plea was voluntary, and because the record indicates that Attorney Gevers acted reasonably in his representation and did not in any way prejudice the Defendant, the Defendant cannot make the necessary showing that reasonable jurists would find the district court's assessment of counsel's performance debatable or wrong. Consequently, the Court will deny a certificate of appealability as to the Defendant's Motion.

**CONCLUSION**

24

For the foregoing reasons, the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 51] is DENIED, and the Defendant is DENIED a certificate of appealability.

SO ORDERED on May 29, 2012.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT